Case: 15-1676

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

—————————————

ANDRE WALKER,

*Plaintiff-Appellant*,

v.

HEALTH INTERNATIONAL CORPORATION, a Florida Corporation, HSN INC., a Delaware Corporation, HSN INTERACTIVE LLC, a Delaware Corporation,

*Defendants-Appellees*.

---

**Appeal from the United States District Court for the District of Colorado in Case No. 12-cv-3256, Judge William J. Martinez**

---

**CORRECTED RESPONSE BRIEF OF APPELLEES HEALTH INTERNATIONAL CORPORATION, HSN, INC., and HSN INTERACTIVE, LLC**

---

**BURR & FORMAN LLP**
Ryan M. Corbett, Esq.
201 N. Franklin Street, Suite 3200
Tampa, FL  33602
Telephone:  813- 221-2626
Facsimile:   813-221-7335
Email:      rcorbett@burr.com
*Counsel for Defendants-Appellees Health International Corporation, HSN, Inc., and HSN Interactive LLC*

## CERTIFICATE OF INTEREST

Counsel for appellees Health International Corporation, HSN, INC., and HSN Interactive, LLC certifies the following:

1. The full name of every party or amicus represented by me is: Appellees Health International Corporation, HSN, INC., and HSN Interactive, LLC

2. The name of the real party in interest (Please only include any real party in interest NOT identified in Question 3. below) represented by me is: Appellees Health International Corporation, HSN, INC., and HSN Interactive, LLC

3. All parent corporations and any publicly held companies that own 10 percent of the stock of the party or amicus curiae represented by me are listed below. (Please list each party or amicus curiae represented with the parent or publicly held company that owns 10 percent or more so they are distinguished separately.)

   HSN, Inc., a publicly held corporation, is the parent of HSN Interactive, LLC.  Liberty Interactive Corporation, a publicly held corporation, owns 10% or more of the stock of HSN, Inc.

   Health International Corporation – None.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are: Mark W. Williams, Esq. and Angela R. Whitford, Esq. with Sherman & Howard L.L.C., and William J. Schifino, Jr., Esq., Daniel P. Dietrich, Esq. and Ryan M. Corbett, Esq. with Burr & Forman LLP.

*/s/ Ryan M. Corbett*
Signature of counsel

Ryan M. Corbett
Printed name of counsel

i

# TABLE OF CONTENTS

I.     STATEMENT OF RELATED CASES ...........................................................1

II.    COUNTER-STATEMENT OF THE ISSUES...............................................1

III.   STATEMENT OF THE FACTS...................................................................1

IV.    SUMMARY OF THE ARGUMENT.............................................................6

V.     ARGUMENT .................................................................................................7

    A.    Standard of Review ...............................................................................7

    B.    Attorneys' Fees Were Properly Granted ...............................................8

    C.    Appellant Is Not The "Prevailing Party," Nor Is That Determination
        Relevant...............................................................................................15

    D.    The District Court Properly Struck Appellant's Opposition to
        Attorneys' Fees...................................................................................17

    E.    The District Court Maintained Jurisdiction Since The Settlement
        Agreement Is Not A Stipulated Dismissal .........................................18

    F.    Vacatur Is Not Appropriate ................................................................21

    G.    Appellees Request An Order Awarding Them Costs and Attorneys'
        Fees Incurred With Seeking Fees and With This Appeal ..................23

VI.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT....................24

CERTIFICATE OF SERVICE ...............................................................................25

CERTIFICATE OF COMPLIANCE.......................................................................26

# TABLE OF AUTHORITIES

## Cases

Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,
  340 F.3d 1298, 1313 (Fed. Cir. 2003) .............................................8

Aqua Marine Supply v. AIM Machining, Inc.,
  247 F.3d 1216, 1221 (Fed. Cir. 2001) ...........................................23

Barron Bancshares, Inc. v. United States,
  366 F.3d 1360, 1375 (Fed. Cir. 2004) ...........................................20

Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human
  Res.,
  532 U.S. 598 (2001).......................................................................16

Conant v. Office of Pers. Mgmt.,
  255 F.3d 1371, 1376 (Fed. Cir. 2001) ...........................................14

Eon-Net LP v. Flagstar Bancorp,
  653 F.3d 1314, 1328 (Fed. Cir. 2011) .............................................8

Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey,
  663 F.3d 1124, 1129 (10th Cir. 2011) .............................................8

Goodwall Constr. Co. v. Beers Constr. Co.,
  991 F.2d 751, 759 (Fed. Cir. 1993) ...............................................14

Hensley v. Eckerhart,
  461 U.S. 424, 434 (1983) ...............................................................18

Hernandez v. George,
  793 F.2d 264, 269 (10th Cir. 1986) ...............................................24

In re Wolf,
  842 F.2d 464, 465 (D.C. Cir. 1988)................................................20

J.P. Stevens Co. v. Lex Tex, Ltd.,
   822 F.2d 1047, 1050 (Fed.Cir.1987) ...............................................7

L.E.A. Dynatech, Inc. v. Allina,
   49 F.3d 1527, 1530 (Fed. Cir. 1995) ............................. 7, 9, 13, 16

Rodriguez v. Luchey & Mitchell Recovery Solutions, LLC,
   No. 12-CV-03035-PAB-KMT, 2013 WL 6068458
   (D. Colo. Nov. 18, 2013) ................................................................24

Ryan v. Hatfield,
   578 F.2d 275, 277 (10th Cir. 1978) ................................... 9, 13, 16

Smith v. Phillips,
   881 F.2d 902, 903 (10th Cir. 1989) ..............................................20

Towerridge, Inc. v. T.A.O., Inc.,
   111 F.3d 758, 765 (10th Cir. 1997) ................................................8

U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship,
   513 U.S. 18, 25 (1994) ...................................................................23

United States v. Munsingwear, Inc.,
   340 U.S. 36 (1950)..........................................................................23

**Rules**

D.C. COLO. L. Civ. R. 7.1 ..................................................................14

Fed. Rule Civ. P. 41(a)(1)(A)(ii) .........................................................15

## I.     STATEMENT OF RELATED CASES

There is no other appeal in or from the same civil action or proceeding in the lower court or body that was previously before this or any other appellate court.

Counsel for appellees is not aware of any case pending in this or any other court that will directly affect or be directly affected by this court's decision in the pending appeal.

## II.     COUNTER-STATEMENT OF THE ISSUES

Whether the District Court properly exercised its equitable powers and awarded Appellees costs and attorneys' fees based on Appellant's post-settlement vexatious actions.

## III.     STATEMENT OF THE FACTS

This appeal relates to an award of attorneys' fees based on Appellant's actions during a patent infringement suit filed against Appellee. On May 6, 2014, Appellant and Appellees mediated the underlying patent infringement dispute and entered into a Mediated Settlement Agreement (the "Settlement Agreement"). A27. On May 9, 2014, three days after the Settlement Agreement was entered into, counsel for Appellees conferred with counsel for Appellant regarding the filing of a Notice of Settlement to inform the District Court that the matter was resolved. A221. Despite the clear and unambiguous terms of the Settlement

1

Agreement that parties will dismiss "all claims between them with prejudice," a disagreement ensued between the parties on whether the Settlement Agreement fully resolved the matter. Appellees believed that the Settlement Agreement resolved the matter in its entirety (A122), while Appellant argued that certain issues remained outstanding.

Over Appellant's objection, on May 9, 2014, Appellee filed a Notice of Settlement and Motion to Stay Deadlines. A122. On the same day, Appellant filed a Notice stating that "[w]hile the parties may have made significant progress during the mediation on May 6, 201[4], there are significant issues that remain to be resolved, and which may require the filing of an amended complaint…Plaintiff is eager to keep this case moving forward…Plaintiff will continue to attempt to reach an agreement on all issues in this case." A126. Based on the parties' dispute over whether the Settlement Agreement resolved all outstanding claims, the District Court denied Appellees' Notice of Settlement and Motion to Stay Deadlines without substantively addressing whether the Settlement Agreement did in fact resolve the case. A128. Appellees were therefore forced to continue to litigate and defend the matter, and unnecessarily incurred additional costs and attorneys' fees. A251.

During the weeks that followed the mediation, Appellant continued to (a) dispute that the case was settled, (b) actively litigate the matter, and (c) pursue

2

discovery. For example, even though the case was settled, Appellant requested that Appellees produce certain documents relating to Appellees' sales figures in response to a previous request for production of documents, to which Appellees objected. A221-A223. In an effort to resolve the dispute, Appellees, under no obligation, offered to provide a spreadsheet summarizing the sales figures. A220. Appellant confirmed that the spreadsheet contained the requested information, so Appellees produced it. A220. However, after receiving the spreadsheet, Appellant not only continued to dispute that the Settlement Agreement resolved all claims, but the next day Appellant filed a Motion for Leave to File Third Amended Complaint. A29. In Appellant's Motion for Leave, Appellant took the additional position that he wanted to "ensure that this action leads to adjudication of all claims arising out of defendants' acts that led to this action." A30; see also A131. Furthermore, despite receiving the spreadsheet, Appellant continued to request additional documents related to Appellee's sales, despite Appellant's counsel admission in an email to Appellee's counsel that the case was settled. A60, A177.

Based on Appellant's insistence that the Settlement Agreement did not resolve the case, Appellees were forced to file multiple motions in an attempt to enforce the Settlement Agreement and dismiss the case, all of which Appellant opposed. Specifically, Appellees filed the Settlement Agreement with the District Court on May 12, 2015, six days after it was executed, so the Court could confirm

Appellees' position that the matter has been fully resolved. A268. Appellees also wanted to have the issue resolved right away before any additional attorneys' fees were incurred. Appellant opposed Appellee's filing of the Settlement Agreement on the basis that "there are numerous issues left to be resolved in the case" including that "the parties have yet to agree on exactly what causes of action the [Settlement] Agreement encompasses, and the parties have yet to agree on the terms of any dismissal of this action. Still further, the Agreement sets forth certain conditions that have yet to be met by [Appellees]." A274-275.

On May 16, 2014, in view of upcoming deadlines in the scheduling order and Appellant's continued refusal to resolve the case, Appellee filed a motion to extend certain upcoming deadlines while the parties attempted to resolve the issue. A282. Appellant again objected to extending any deadlines. A282.

As Appellees' due date for making the initial settlement payment was approaching, Appellant continued to dispute that the Settlement Agreement resolved all issues in the case. In an effort to confirm Appellees' position that the Settlement Agreement resolved all issues in the case before making payment, on May 29, 2014, Appellees filed a motion to enforce the Settlement Agreement. A134. On June 2, 2014, prior to the initial payment being made, Appellant executed a General Release. A63-65. On June 4, 2014, Appellees sent the initial payment to Appellant, in accordance with the terms of the Settlement Agreement.

4

A110.  But even after Appellee made the initial settlement payment and Appellant executed the General Release, Appellant continued to resist dismissal, forcing Appellees to file a motion for an order dismissing the case with prejudice and a motion for sanctions under Federal Rule of Civil Procedure 11, both of which Appellant opposed.  A184, A287.

The pending motions were referred to the Magistrate Judge who held a status conference on July 2, 2014.  At that conference, the parties agreed that the matter "should" be dismissed, but could not agree on the terms of dismissal.  A60. Even though the General Release was already executed by Appellant, and Appellees made the initial payment pursuant to the Settlement Agreement, Appellant "contend[ed] that he is entitled to production of certain documents by [Appellees]" and he wanted those documents "prior to dismissal."  A60.  Appellant also requested that the "Court should retain jurisdiction over the case."  A60.

On August 4, 2014, the District Court granted Appellees' Motion to Dismiss, finding that the Settlement Agreement "resolves all claims between the parties" (A69) and that "Plaintiff's actions have unnecessarily multiplied the proceedings at a time when the underlying claims have admittedly been resolved." A71.  Pursuant to the District Court's equitable powers, Appellees were "awarded reasonable attorneys' fees and costs resulting from [Appellant's] vexatious actions after filing the Notice of Settlement."  A71-72.  Based on Appellant's post-

5

settlement vexatious actions, Judgment awarding Appellee's attorneys' fees in the amount of $20,511.50 was subsequently entered.    A105-106.    This appeal followed.

## IV.    **SUMMARY OF THE ARGUMENT**

The Settlement Agreement resolved all claims between the parties and, therefore, there was nothing further for the parties to litigate in the case.  Appellant has offered constantly evolving excuses for its post-settlement conduct, none of which justified the continued litigation of a dispute that was fully resolved.  Due to Appellant continuing to unreasonably litigate the matter post settlement, Appellees were forced to defend the matter and incur unnecessary legal fees, which the District Court properly awarded to Appellees.

Appellant argues that the filing of the Settlement Agreement extinguished the District Court's jurisdiction.  The plain language of the Settlement Agreement and Appellant's conduct make clear that the District Court never lost jurisdiction of the matter.  The Settlement Agreement expressly states that "[u]pon payment of $200,000 [Appellant] will deliver a release to [Appellees], and by joint stipulation the parties to this agreement shall dismiss all claims between them with prejudice." A27.  The Settlement Agreement "makes clear that the parties' joint stipulation was to be a separate filing that would follow the delivery of payment and a

release." A115.  The Settlement Agreement itself does not act as a stipulation for dismissal but, rather, required that the parties confer and submit a joint stipulation. A115.  Appellant repeatedly argued that the case should not be dismissed and even expressly stated that the District Court should retain jurisdiction after the Settlement Agreement was filed.  A60.

The District Court acted within its equitable powers when it granted Appellees costs and attorneys' fees based on Appellant's vexatious actions. The Judgment of the District Court (A120-121) should therefore be affirmed.

V.    **ARGUMENT**

A.    **Standard of Review**

This court reviews an award of attorney fees and costs under the highly deferential abuse of discretion standard.  See L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1530 (Fed. Cir. 1995).  A district court abuses its discretion when it makes an error of law, or a clear error of judgment, or exercises its discretion on findings which are clearly erroneous.  Id. (citing J.P. Stevens Co. v. Lex Tex, Ltd., 822 F.2d 1047, 1050 (Fed.Cir.1987)).

A grant or denial of a motion to strike is not an issue unique to patent law and, therefore, the Federal Circuit will apply the law of the regional circuit.  See Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc., 340 F.3d 1298, 1313

(Fed. Cir. 2003).  Likewise, the Federal Circuit applies the law of the regional circuit in reviewing awards of attorneys' fees.  Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1328 (Fed. Cir. 2011).  The Tenth Circuit reviews a motion to strike under an abuse of discretion standard.  See Eugene S. v. Horizon Blue Cross Blue Shield of New Jersey, 663 F.3d 1124, 1129 (10th Cir. 2011).  The Tenth Circuit also reviews an award of attorneys' fees for an abuse of discretion. Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 765 (10th Cir. 1997).

### B.    Attorneys' Fees Were Properly Granted

A District Court may award attorneys' fees and costs in its discretion pursuant to its equitable powers when a litigant has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  Ryan v. Hatfield, 578 F.2d 275, 277 (10th Cir. 1978) (citing Hall v. Cole, 412 U.S. 1, 4-5 (1973)); L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1530 (Fed. Cir. 1995) ("District courts possess inherent power to assess attorney fees as a sanction when a party acts in bad faith, vexatiously, want only, or for oppressive reasons").  As explained above, the District Court based its fee award on Appellant's vexatious post-settlement actions that caused Appellee to incur unnecessary expenses litigating a case that the parties settled.

Appellant's vexatious actions began almost immediately after mediation, when Appellant inexplicably opposed Appellees' Notice of Settlement and Motion

8

to Stay pending the parties' compliance with their initial obligations pursuant to the Settlement Agreement and filing of a joint stipulation of dismissal. A122; A126. Based on Appellant's opposition, the District Court denied Appellees' Motion to Stay, which opened the door for Appellant to continue to litigate the matter. A128. Appellant offers a number of excuses why he continued to litigate a matter in which all the claims have been settled, none of which are persuasive.

At first, Appellant argued that he needed sales documents to support the settlement discussions. A220-223. When Appellee provided documents summarizing Appellee's sales figures, Appellant claimed that additional documents were necessary. A60. However, there was no need for additional document production because the parties had already negotiated and signed the Settlement Agreement, Appellee had made the required initial payment, and Appellant had already issued the General Release. If Appellant wanted Appellee's financial documents to verify the settlement amount, he should have requested them before executing the Settlement Agreement. Thus, there was no justification for Appellant's continued insistence that Appellee produce documents after the Settlement Agreement was executed.

Appellant subsequently filed a Notice to Court explaining that "[w]hile the parties may have made significant progress during the mediation…there are significant issued that remain to be resolved," but did not specify what issues

allegedly remained outstanding.  A126.  Appellant then filed a Motion for Leave to File a Third Amended Complaint, in which Appellant asserted that he "would like to ensure that this action leads to adjudication of all claims arising out of [Appellees'] acts that led to this action."  A30.   Appellant also filed an opposition to Appellees' Rule 11 Motion, in which Appellant stated that he filed the Motion to Amend "in order to provide a clear record of all of the claims that could have been asserted in the current pleadings."  A198.   But Appellant has not articulated any reason why it was necessary to amend the Complaint in order to resolve "all claims arising out of [Appellees] acts that led to this action" or why it was necessary to document all claims that could have been asserted in the pleadings.  As the District Court found, the Settlement Agreement "resolves all claims between the parties." A69.  Thus, whether Appellant pled each and every cause of action may have been able to assert is irrelevant because the Settlement Agreement resolved _all_ claims between the parties.  Indeed, the District Court acknowledged that pleading every possible cause of action "was utterly unnecessary given the blanket language in the Agreement that it would resolve all claims between the parties."   A70-A71. Appellant's proposed justification for prolonging the case should therefore be rejected as it defies logic and is contrary to the broad language of the Settlement Agreement.

10

Appellant further states in his opening brief "that he did not want the case dismissed before Appellees complied with their initial payment obligations." Appellant's Br., p. 3. This argument also defies common sense and is inconsistent with Appellant's post-settlement conduct. Appellees made the initial settlement payment on June 4, 2014. A110. Yet during the July 2, 2015 status conference, nearly one month after Appellees paid the initial settlement payment, Appellant continued to oppose dismissing the case on the basis that Appellant was entitled to production of certain documents by Appellee. A60. Appellant's proffered reason for refusing to dismiss the case, *i.e.*, to ensure Appellee paid the initial settlement payment, is plainly contradicted by Appellant's own actions and should be rejected.

There was no justifiable reason for any of Appellant's post-mediation actions. The Settlement Agreement resolved all claims between the parties, and the parties complied with the settlement conditions. A27, A70-71. Though Appellant alleges that he resisted dismissal because of alleged documents owed to Appellant and to ensure payment of the initial settlement fee, Appellant executed a General Release in favor of Defendants on June 2, 2014 (A63) before Appellant received the additional documents to which he was allegedly entitled, without a ruling on his Motion for Leave to File a Third Amended Complaint, and before receiving the initial payment from Appellees (which was not yet due). In other

11

words, Appellant made a number of unfounded assertions to justify his post-settlement actions, yet eventually abandoned his positions and executed the General Release. Meanwhile, Appellees were forced to incur costs and fees due to Appellant's unreasonable refusal to dismiss the case.

Appellant further argues that the District Court's award of attorneys' fees was an abuse of discretion because "the district court did not enter a finding of subjective bad faith, but merely disagreed with Appellant's litigation strategy." Appellant's Br., p. 11. Appellant's argument ignores the plain language of the District Court's order dismissing the case. The District Court specifically found that Appellant's post-settlement actions "have unnecessarily multiplied the proceedings at a time when the underlying claims have admittedly been resolved," "are not supported by any justifiable litigation strategy, particularly given [Appellant's] current position that the case should be dismissed," "wasted the time and resources of both [the District Court] and the Parties," and "Plaintiff's vexatious actions fall within the enumerated exceptional circumstances permitting an award of attorney's fees." A71. The District Court also specifically rejected Appellant's proposed reasons for refusing to dismiss the case, noting that Appellant's explanation that Appellant sought to amend the Complaint to provide a clear record of all claims that could have been asserted "appears disingenuous." A70.

Under Tenth Circuit law, the trial court has discretion in awarding attorneys' fees, and "will be reversed only in circumstances which do not show a reasonable ground for the conclusion that vexatiousness existed." Ryan, 578 F.2d at 277. The District Court considered Appellant's proposed reasons for refusing to dismiss the case, and rejected them. The District Court's award should be affirmed because the District Court articulated a reasonable basis for its conclusion that Appellant's conduct was vexatious in nature. See also L.E.A. Dynatech, Inc. v. Allina, 49 F.3d 1527, 1531 (Fed. Cir. 1995) ("sufficient record evidence supports the award"); Goodwall Constr. Co. v. Beers Constr. Co., 991 F.2d 751, 759 (Fed. Cir. 1993) (this court need not remand for explicit fact findings if sufficient record evidence supports an award of attorney fees).

Appellant also asserts that "his filings [are] entirely consistent with the court's scheduling order and his interests in preserving his rights in the event the [Settlement Agreement] fell through." Appellant's Br., p. 11. Appellant's argument is unavailing. First, the Settlement Agreement is a contract (Conant v. Office of Pers. Mgmt., 255 F.3d 1371, 1376 (Fed. Cir. 2001)) and, therefore, to the extent that Appellees did not, or do not, comply with any of its terms, Appellant would have a claim for breach of the Settlement Agreement, not on the resolved claims in the underlying matter.

Second, if Appellant truly wanted to wait and see if Appellees made the initial payment within thirty (30) days, as required by the Settlement Agreement, it is inexplicable why Appellant opposed Appellees' Motion to Stay the deadlines. A122; A126; A282.  Staying the case would have given the parties time to meet their obligations under the Settlement Agreement, while at the same time ensure that the parties do not miss any deadlines in the scheduling order.

Finally, Appellant makes the irrelevant argument that Appellees' counsel failed to promptly inform Appellant when Appellees tendered payment of the initial settlement fee to Appellees' counsel.  Appellant's Br., p. 12.  This argument is a transparent attempt to paint Appellees' counsel in a negative light to deflect attention away from Appellant's vexatious conduct.  Neither Appellees, nor their counsel, engaged in any wrongdoing whatsoever.  Appellees and their counsel were under no obligation to inform Appellant when Appellee provided the payment to Appellee's counsel.  The Settlement Agreement merely provided that Appellees had thirty (30) days (until June 5, 2014) to make the initial payment, which Appellees undisputedly paid on time.  A27.  Any unnecessary post-settlement litigation was caused solely by Appellant's refusal to submit a joint stipulation of dismissal and refusal to stay the case deadlines.

Accordingly, the District Court did not abuse its discretion in awarding Appellees attorneys' fees and costs "resulting from [Appellant's] vexatious actions after filing the Notice of Settlement." A71-72.

## C. Appellant Is Not The "Prevailing Party," Nor Is That Determination Relevant

In its brief, Appellant makes the inapposite argument that the District Court erred by awarding fees against Appellant because Appellant is allegedly the "prevailing party." Appellant's Br., p. 12. Attorneys' fees were awarded to Appellees based on the District Court's inherent and equitable power to assess attorney fees as a sanction when a party acts in bad faith, vexatiously, want only, or for oppressive reason. See L.E.A. Dynatech, 49 F.3d at 1530. As explained above, Appellees were awarded attorneys' fees and costs resulting from Appellant's vexatious actions after filing the Notice of Settlement. A71-72; see Ryan, 578 F.2d at 277. The District Court did not need to determine who the "prevailing party" was to award such fees, because that determination is irrelevant.[1]

---

[1] In any event, Appellees disagree that Appellant is the "prevailing party." In the Second Amended Complaint, Appellant sought relief relating to Defendants' alleged infringement. A12. Pursuant to the Settlement Agreement, there is no reference to infringement or any concessions by Appellees. Appellant did not obtain a settlement of $300,000 as stated in Appellant's Br., p. 12, but, rather, Defendants paid for an exclusive license to the patent at issue. A27.

In support of his position, Appellant cites <u>Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.</u>, 532 U.S. 598 (2001), but completely misstates the Supreme Court's holding.    Appellant's Br., p. 12. Appellant incorrectly states in his brief that "[t]he Supreme Court has held that a plaintiff is the 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct."  Appellant's Br., p. 12.  In fact, the Supreme Court held exactly the opposite:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party."  The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.  We hold that it does not.

<u>Id</u>. at 600.

In any event, the petitioners in <u>Buckhannon</u> requested fees as the "prevailing party" pursuant to a fee-shifting statute, which is not the issue here.  The Supreme Court held that the "fee-shifting provisions of [the Fair Housing Amendments Act] and of [the Americans with Disabilities Act] require party to secure either a judgment on merits or court-ordered consent decree in order to qualify as 'prevailing party.'"   <u>Id</u>. at 598.  Neither is present here.

The Court should disregard Appellant's argument because it does not have any relevance to the issues on appeal, and is not supported by the cited case law.

16

**D.    The District Court Properly Struck Appellant's Opposition to Attorneys' Fees**

In arguing that the District Court did not have authority to strike Appellant's opposition to attorneys' fees, Appellant fails to inform this Court that Appellant did in fact respond to Appellees request for fees (A152) that the District considered when rendering the Order awarding Appellees costs and fees.    (A66, which references Appellant's response at ECF No. 165).    In response to the Order awarding Appellees fees, Appellant moved for reconsideration, and again argued why Appellant should not be awarded fees, and referenced other filings by Appellant that address Appellees' request for fees.    A232; A241.    Therefore, Appellant filed multiple documents addressing the issue, which the District Court considered, and ultimately denied Appellant's motion for reconsideration.  A113.

In the Order awarding Appellees' costs and fees, the District Court requested that Appellees file documentation supporting the amounts requested.  A72.  The District Court was not looking for additional briefing on the issue of fees, since the issue of whether fees should be awarded was already briefed and an Order entered. In response to the District Court's request, Appellees submitted an Affidavit of Fees.    A248.    Appellant contends that he should have had an opportunity to respond to the Affidavit.

First, the only issue left for the District Court to determine was the amount and reasonableness of the cost and attorneys' fees requested by Appellees.  This is

a determination for the District Court.  <u>See</u> <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983) (explaining the factors the court considers in determining amount of fees).  The District Court, after reviewing the Affidavit, determined that the amount requested is reasonable.  A104.

Second, even if Appellant was entitled to submit a response to the Affidavit, the District Court properly ruled that the response, filed six (6) months after the Affidavit was filed, was untimely.  Appellant argues that his pending Motion for Reconsideration tolled the time to respond.  Appellant does not provide any support for his position, because there is none.  In addition, there is no Local Rule regarding a response time to an affidavit for attorneys' fees, since such an affidavit does not warrant a response.  Furthermore, the Local Rules do not allow for an open-ended response deadline, and D.C.COLO.LCivR 7.1 explains that a party has twenty-one (21) days after service to respond to a motion.

### E.    The District Court Maintained Jurisdiction Since The Settlement Agreement Is Not A Stipulated Dismissal

Appellant contends that the District Court lost jurisdiction when the Settlement Agreement was filed since it acted as a stipulation for dismissal, and "the filing of the [Settlement Agreement] on August 15, 2014, mooted any further litigation between the parties."  Appellant's Br., pp. 15-16.[2]  When the terms of a

---

[2] Appellee is not aware of the filing Appellant is referring to on August 15, 2014, since the District Court docket does not reveal a filing on that date.  The

contract, such as the Settlement Agreement, are clear and unambiguous, they must be given their plain meaning.  See Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004).

Here, the Settlement Agreement unambiguously states that after completion of an initial condition (i.e. payment of a specified amount within 30 days), Appellant "will deliver a release to [Appellees] and by joint stipulation the parties to this agreement shall dismiss all claims between them with prejudice."  A27. "This sentence makes clear that the parties' joint stipulation was to be a separate filing that would follow the delivery of payment and a release, and thus the [Settlement] Agreement itself does not act as a stipulation for dismissal under Rule 41(a)(1)(A)(ii)."  A115.  The cases cited by Appellant (Appellant Br., p. 16) further support this because separate stipulations for dismissal were filed by the parties in those cases.  See Smith v. Phillips, 881 F.2d 902, 903 (10th Cir. 1989); In re Wolf, 842 F.2d 464, 465 (D.C. Cir. 1988).

In addition, Appellant's argument that the case was dismissed when the Settlement Agreement was filed is at complete odds with the Appellant's actions after the Settlement Agreement was filed.  Not only did Appellant continue to litigate the matter, as discussed above, which would not have been necessary if the case was dismissed, but Appellant argued on numerous occasions that the parties

Settlement Agreement was filed on May 12, 2014.

had to agree on the terms of dismissal, and even submitted a proposed joint stipulation. A143-151. Appellant made the same argument in open court on July 2, 2014, in which the Magistrate Judge informed the parties that the District Judge will rule on pending motions "if they fail to resolve their differences regarding the terms of dismissal." A60.

Appellant states that he opposed the filing of the Settlement Agreement because "he did not want the case dismissed before Appellees complied with their initial payment obligations." Appellant's Br., p. 3. Appellant could have easily agreed to Appellees' motion to extend the deadlines until the initial payment was made, but he objected. A122; A282. In addition, the filing of the Settlement Agreement itself did not dismiss the case because the Settlement Agreement specifically states that the parties shall dismiss all claims by joint stipulation. A27. Appellant expressly agreed that a separate stipulation was required, noting in opposition to Appellee's motion to enforce the Settlement Agreement that "[p]ursuant to the terms of that settlement, the parties need to agree to a dismissal of the case." A143-151. Therefore, there can be no dispute that, pursuant to the Settlement Agreement, the parties had to agree on and file a joint stipulation.

In his brief, Appellant also contends that the "case stood dismissed…upon the parties confirmation in open court during the July 2, 2014, status conference." Appellant Br., p. 16. As Appellant notes in his brief, and as explicitly explained in

the Courtroom Minutes, at the July 2, 2014 status conference, while the parties agreed that the matter "should" be dismissed, they could not agree on the terms of dismissal.  A60.  Appellant continued to resist dismissal because he "contend[ed] that he is entitled to production of certain documents by [Appellees]" and he wanted those documents "prior to dismissal."  A60.  Appellant further explicitly stated that the "Court should retain jurisdiction over the case."  A60.[3]  Therefore, Appellant continues to take completely inconsistent positions.  Since the parties could not resolve their differences on the terms of the dismissal, the District Court entered an order granting Appellees motion for dismissal, which also awarded Appellees costs and attorneys' fees.  A66-72.

## F.    Vacatur Is Not Appropriate

Appellant's basis for seeking to vacate the District Court's Order (A66) and the Final Judgment (A120) is that the District Court lost jurisdiction when the Settlement Agreement was filed.  For the reasons explained above, this argument fails.

---

[3] Appellant states on page 17 of his brief that "the district court lacked Article III jurisdiction to decide the motions filed after August 12, 2014."  It is unclear what the relevance of that date is.  In any event, it is noteworthy that Appellant stated on July 2, 2014 that the Court should retain jurisdiction, and continued to make filings in the District Court after August 12, 2014, yet is arguing the Court lacked jurisdiction.  A73, 107.

In addition, vacatur is an extraordinary remedy available when the review of a judgment is "prevented through happenstance – that is to say, where a controversy presented for review has become moot due to circumstances unattributable to any of the parties" or "where mootness results from the unilateral action of the party who prevailed in the lower court." See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 25 (1994) (internal quotes omitted). Appellant has not provided any support for his request for equitable entitlement, nor can he. The issue on appeal is not moot. As explained, the Final Judgment (A113) was entered as a result of Appellant's vexatious actions that took place after the Settlement Agreement was executed. (A71). "There are no exceptional circumstances here that would support departure from the general rule against vacatur." Aqua Marine Supply v. AIM Machining, Inc., 247 F.3d 1216, 1221 (Fed. Cir. 2001).

United States v. Munsingwear, Inc., 340 U.S. 36 (1950), cited by Appellant, further supports Appellees' position against vacatur. This is not a case that "has become moot while on its way [to this Court] or pending [this Court's decision] on the merits." Id. (further explaining that the plaintiff did preserve its rights because it did not file a motion to vacate, the denial of which would be reviewable on appeal). The Final Judgment remains outstanding and is not a moot issue. For the reasons explained, vacatur is not appropriate.

**G.    Appellees Request An Order Awarding Them Costs and Attorneys' Fees Incurred With Seeking Fees and With This Appeal**

"Federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require." <u>Hall v. Cole</u>, 412 U.S. 1, 4–5 (1973).  "It is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons." <u>Id.</u>; <u>see</u> <u>also</u> <u>Hernandez v. George</u>, 793 F.2d 264, 269 (10th Cir. 1986) (Court's generally allow recovery of fees for attorneys' work in seeking attorneys' fees); <u>Rodriguez v. Luchey & Mitchell Recovery Solutions, LLC</u>, No. 12-CV-03035-PAB-KMT, 2013 WL 6068458 (D. Colo. Nov. 18, 2013) (granting request for fees expended for work in seeking attorneys' fees).

This appeal is nothing more than a continuation of Appellant's vexatious actions, and is causing Appellees to incur further costs and attorneys' fees in upholding the costs and fees they were awarded in the District Court.  Therefore, Appellees should be awarded additional costs and fees incurred in connection with this appeal.  Upon an award granting costs and fees, Appellees will submit documentation supporting their requested amounts.

## VI.    CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The Final Judgment (A105-106) should be affirmed, and Appellees should be awarded costs and fees incurred in connection with this appeal, in amounts to be determined.

Respectfully submitted,

Date: <u>September 14, 2015</u>

<u>/s/ Ryan M. Corbett</u>
**BURR & FORMAN LLP**
Ryan M. Corbett, Esq.
201 N. Franklin Street, Suite 3200
Tampa, FL  33602
Telephone:  813- 221-2626
Facsimile:   813-221-7335
Email:        rcorbett@burr.com

*Counsel for Defendants-Appellees*
*Health International Corporation,*
*HSN, Inc., and HSN Interactive LLC*

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 14, 2015, this CORRECTED RESPONSE BRIEF OF APPELLEES HEALTH INTERNATIONAL CORPORATION, HSN, INC., and HSN INTERACTIVE, LLC was filed electronically using the CM/ECF system and served via the CM/ECF system on counsel for the other parties as follows:

> Ramon L. Pizarro
> 3515 South Tamarac Drive, Suite 200
> Denver, Colorado 80237
> ramon@ramonpizarro.com

> /s/ Ryan M. Corbett
> Ryan M. Corbett, Esq.
> **BURR & FORMAN LLP**
> 201 N. Franklin Street, Suite 3200
> Tampa, FL  33602
> Telephone:  813- 221-2626
> Facsimile:   813-221-7335
> Email: rcorbett@burr.com

> *Counsel for Defendants-Appellees Health*
> *International Corporation, HSN, Inc., and*
> *HSN Interactive LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).   I certify that the foregoing BRIEF OF APPELLEES contains 5,241 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

The brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).   The brief has been prepared in a proportionally spaced typeface in size 14 font Times New Roman.


Dated: <u>September 14, 2015</u>          <u>*/s/Ryan M. Corbett*</u>
                                        Ryan M. Corbett
                                        *Counsel for Appellees*